**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| TONI GALLOW | CASE NO. 2:17-cv-01007 |
| Plaintiff, | |
| v. | JUDGE MICHAEL H. WATSON |
| ADAM PITTIS, *et al.* | MAGISTRATE JUDGE JOLSON |
| Defendants. | |

**DEFENDANTS ADAM PITTIS AND EAST GUERNSEY LOCAL SCHOOL DISTRICT BOARD OF EDUCATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Now come Defendants who, pursuant to Fed. R. Civ. Proc. 56(B), hereby move the Court for an Order granting them summary judgment on Complaint Count One (the only federal claim), which alleges a procedural due process violation based upon the denial of an alleged liberty interest; namely, a "name clearing hearing." Based upon the inconvertible facts and applicable case law, Superintendent Pittis is entitled to qualified immunity. Correlatively, the Board of Education is entitled to judgment as a matter of law. A Memorandum in Support is attached hereto.

    Respectfully submitted,

    O'TOOLE, McLAUGHLIN, DOOLEY
    & PECORA CO., LPA

By:   */s/ John D. Latchney*
    John D. Latchney (0046539)
    5455 Detroit Road
    Sheffield Village, OH 44054
    Telephone: (440) 930-4001
    Facsimile: (440) 934-7208
    Email: jlatchney@omdplaw.com
    *Attorney for Defendants Adam Pittis*
    *and East Guernsey Board of Education*

**MEMORANDUM IN SUPPORT**

**I.     INTRODUCTION**

Plaintiff has alleged only one federal claim, which is set forth in Second Amended Complaint [Doc. 26] Count One, and purports to be a procedural due process claim based upon the Superintendent's failure to provide a "name clearing hearing" to Plaintiff. In contrast, there are now seven (7) state law claims: Count Two (breach of express/implied contract), Count III (unjust enrichment), Count IV (age discrimination/hostile environment), Count V (sex discrimination/hostile environment), Count VI (retaliation), Count VII (defamation), and Count VIII (false light/invasion of privacy).

Based upon Sixth Circuit case law, the outcome-determinative pure legal issue[1] is narrow and straightforward: Is Plaintiff still employed by Defendant East Guernsey School District Board of Education as a teacher? Since the incontrovertible answer is "yes," Plaintiff's sole federal claim fails as a matter of law and Defendant Pittis is entitled to partial summary judgment as a matter of law based upon qualified immunity.

**II.    STATEMENT OF ALLEGATIONS/FACTS**

Teachers who have "continuing contract" status in the State of Ohio are generally have a property interest in their employment pursuant to R.C. § 3319.08(D). Limited contracts are for five-year terms and, for teachers, governed by R.C. § 3319.08(C)(3).

Plaintiff is and has been employed by the Board of Education since 2003. Doc. 26, PageID# 228, Second Am. Compl. ¶15. Plaintiff has been employed as a math and science teacher

---

[1]     Resolution of qualified immunity is a pure question of law for the Court. *Virgili v. Gilbert*, 272 F.3d 391, 392 (6th Cir. 2001); *Turner v. Scott,* 119 F.3d 425, 428 (6th Cir.1997)

at the high school. *Id*. at ¶17. Presently, Plaintiff is a middle school science and history teacher. *Id*., PageID# 242, at ¶72.

Beyond her regular teaching assignment, Plaintiff also performed additional work under a number of "supplemental contracts." Unlike continuing contracts under R.C. § 3319.08(D) and limited contracts under R.C. § 3319.08(C)(3), teachers in Ohio have no property rights in supplemental contracts. Indeed, R.C. § 3319.11(I) provides an express exclusion for the rights afforded by R.C. § 3319.08 and states that "The provisions of this section shall not apply to any supplemental written contracts entered into pursuant to section 3319.08 of the Revised Code." In other words, "[e]ffective July 1, 1989, supplemental written contracts were excluded from the automatic renewal provisions of R.C. 3319.11. R.C. 3319.11(I), 142 Ohio Laws, Part II, 3363." *Hara v. Montgomery Cty. Joint Vocational Sch. Dist*., 75 Ohio St.3d 60, 63, fn. 1, 1996-Ohio-131, 661 N.E.2d 711, 713.

Plaintiff's supplemental contracts [which were attached to the First Amended Complaint and are identified as Docs 26-3, 26-4, 26-5, and 26-6], all state that they are for a one year period during a particular school year, *i.e.* 2016-2017. All of the supplemental contracts state: "This supplemental contract **shall expire automatically at the end of its term**, and any right to evaluation, statement of circumstances, continuing contract or notice of nonrenewal is hereby waived and relinquished, pursuant to R.C. 3319.11(I)." (Emphasis added).

Boiled down to its' essence, Plaintiff's complaint is that the Superintendent investigated her for, *inter alia*, falsification of time records—a possible theft in office crime in the State of Ohio pursuant to R.C. § 2921.41. As part of that investigation, the Superintendent met with Plaintiff and her Union representatives to discuss the allegations. During the course of three meetings, information and documentation were disclosed to Plaintiff and her Union representatives regarding

the allegations. Apparently, Plaintiff's Union representatives have been gossiping about what transpired during the course of those three meetings and Plaintiff claims her professional reputation has been damaged as a result.

Although the Superintendent found (at that time), some evidence that Plaintiff had committed falsification of time records in one instance where she appeared to be "double dipping" in terms of her bus driving and tutoring duties, the Superintendent decided not to pursue disciplinary action against Plaintiff. However, beyond that apparent discrepancy, the investigation did reveal concerns about the quality of Plaintiff's work under certain "supplemental contracts." As such, the Superintendent proceeded to limit the number of "supplemental contracts" he would recommend Plaintiff to the Board of Education for the following school year. For the 2017-2018 school year, Plaintiff did not receive some of the supplemental contracts she had in the past.

Subsequently, Plaintiff's counsel wrote to Superintendent Pittis demanding a "name clearing hearing." The Superintendent responded denying that request citing R.C. § 3319.11(I). See Docs. 26-1 and 26-2, PageID#s 259-260.

Although Plaintiff remains employed as a full-time teacher for the Board of Education, she claims that the nonrenewal of the supplemental contracts, coupled with the alleged publication of possible criminal activity, has created as stigma such that Plaintiff has become unemployable in the local community due to the damage to her professional reputation.

Even construing the facts most favorably to Plaintiff, and assuming *arguendo* the Superintendent published, without privilege to do so, information about his investigation (including the potentially criminal nature of Plaintiff's alleged conduct), to third parties who were not entitled to receive the information, the Superintendent remains entitled to summary judgment on Complaint Count One because there has been no constitutional violation, nor any violation of

4

a clearly established constitutional right. Absent a constitutional violation, the Board of Education is entitled to summary judgment as well.

### III. LAW AND ARGUMENT

#### A. Qualified immunity generally

For acts taken in the course of official duties, a public official presumptively receives immunity for such acts. *Mays v. City of Dayton*, 134 F.3d. 809, 813 (6th Cir. 1998). Plaintiff bears the ultimate burden of demonstrating that a defendant is not entitled to qualified immunity. *Baker v. City of Hamilton*, 471 F.3d 601, 605 (6th Cir. 2006). To prevail on claims brought pursuant to § 1983, a plaintiff bears the burden of establishing that a person acting under the color of law deprived the plaintiff of a right secured by the United States Constitution or the laws of the United States. *Smoak v. Hall*, 460 F.3d 768, 777 (6th Cir. 2006).

Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Messerschmidt v. Millender*, 565 U.S. 535, 546, 132 S.Ct. 1235, 1244–45, 182 L. Ed.2d 47 (2012); *Dorsey v. Barber*, 517 F.3d 389, 400 (6th Cir. 2008). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 800, 818 (2009).

It is well-established that any injury caused merely by negligence does not constitute a "deprivation" of any constitutionally protected interest. *Collins v. City of Shaker Heights*, 503 U.S. 115 (1992); *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 201-202 (1989). Indeed, to violate the Constitution, the complained of action must be committed knowingly

or intentionally, as mere negligence or recklessness is insufficient. *Ahlers v. Schebil*, 188 F.3d 365, 372 (6th Cir. 1999).[2]

Moreover, the threshold inquiry in a qualified immunity case is whether a constitutional violation has occurred at all. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). It is the plaintiff's burden to convince the court that the law was <u>clearly established at the time of the offensive conduct</u>. In doing so, **a plaintiff cannot simply identify a clearly established right in the abstract and allege that the defendant has violated it**. Instead, the plaintiff must show a substantial correspondence between the conduct in question and **prior law** allegedly establishing the defendant's actions were clearly prohibited. [Internal citations omitted]. *Hughes v. City of North Olmsted*, 93 F.3d 238, 241 (6th Cir. 1996)(emphasis added).

In determining whether an official is entitled to qualified immunity, the question is "Whether a reasonable [official] could have believed [their conduct] to be lawful in light of clearly established law and the information [the official] possessed. [The official's] **subjective beliefs...are irrelevant**. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "In *Harlow v. Fitzgerald* … the Supreme Court **rejected the inquiry into the state of mind** of the person seeking immunity in favor of a wholly objective standard for determining whether or not qualified immunity exists. Under this test, an official would be immune 'if officers of reasonable

---

[2] "[I]t is now firmly settled that injury caused by negligence does not constitute a 'deprivation' of any constitutionally protected interest." *Upsher v. Grosse Pointe Pub. Sch. Sys.*, 285 F.3d 448 (6th Cir. 2002). "Gross negligence is not actionable under § 1983, because it is not 'arbitrary in the constitutional sense.'" *Cheriee Gazette v. City of Pontiac*, 41 F.3d 1061, 1066 (6th Cir. 1994), <u>citing</u> *Lewellen v. Metropolitan Gov't of Nashville*, 34 F.3d 345, 351 (6th Cir. 1994) (<u>citing</u> *Collins*, 112 S. Ct. at 1071).

competence could disagree' on whether the conduct violated the plaintiff's rights." *Gossman v. Allen*, 950 F.2d 338, 341 (6th Cir. 1991).

In *Cope v. Heltsley*, 128 F.3d 452 (6th Cir. 1997), the Sixth Circuit, addressing the two-step qualified immunity analysis, stated: The logical first step in deciding whether there is a colorable claim that a defendant has violated a "clearly established" constitutional right is to decide "whether the plaintiff has asserted a violation of a constitutional right at all." *Id.* at 458. The second step of the qualified immunity analysis, that is, objective legal reasonableness, requires the courts to examine the asserted right at a "relatively high level of specificity." *Id.* The right must have been "clearly established" not just in abstract sense, but in a "particularized" sense. *Id.* at 458-59. Claims of immunity are thus to be analyzed "on a fact-specific, case-by-case basis to determine whether a reasonable official in the defendant['s] position could have believed that his conduct was lawful…." *Pray v. City of Sandusky*, 49 F.3d 1154, 1158 (6th Cir. 1995). And the burden of convincing the court that the law was clearly established under this particularized "could have believed" test is a burden that rests squarely on the plaintiff. *Hughes, supra*, 93 F.3d at 241.

> **B.     There is no clearly established constitutional right to a "name clearing hearing" where an employee has not been terminated.**
>
>> 1.     <u>The stigmatizing statements *must* be made in conjunction with the Plaintiff's termination from employment</u>.

The four key decisions are all reported and adverse to Plaintiff's position: *Crosby v. Univ. of Kentucky*, 863 F.3d 545 (6th Cir. 2017), *cert. denied sub nom. Crosby v. Capilouto*, 138 S. Ct. 741, 199 L. Ed. 2d 607 (2018); *Ludwig v. Bd. of Trustees of Ferris State Univ.*, 123 F.3d 404, 410 (6th Cir. 1997); *Garvie v. Jackson*, 845 F.2d 647, 652 (6th Cir. 1988); and *Gies v. Flack*, 495 F.

Supp.2d 854, 867 (S.D.Ohio 2007). Indeed, the Sixth Circuit has long required that an employee be terminated from employment a "name clearing hearing" is necessary.

In *Garvie v. Jackson*, 845 F.2d 647 (6th Cir. 1988), the Sixth Circuit held that a plaintiff who was removed from his position as Department Head, yet remained a tenured professor at full salary, did not have a clearly established liberty interest in his administrative position. Plaintiff Garvie could not overcome the defense of qualified immunity because "[i]t is not clear ... that defamation unaccompanied by termination of employment or another change in [the plaintiff's] legal status constitutes a deprivation of liberty under the fourteenth amendment." Thus, Plaintiff being removed as Math Department Head doesn't provide her with a basis for a name clearing hearing claim." *Id*. at 652.

In *Ludwig v. Bd. of Trustees of Ferris State Univ.*, 123 F.3d 404, 410 (6th Cir. 1997), the Sixth Circuit opined:

> An injury to a person's reputation, good name, honor, or integrity constitutes the deprivation of a liberty interest when the injury occurs in connection with an employee's termination. *See Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972); *Chilingirian v. Boris,* 882 F.2d 200, 205 (6th Cir.1989). When a deprivation of a liberty interest of this kind occurs, the employee must be afforded notice and an opportunity to be heard to refute the charges disseminated against him. *See Chilingirian,* 882 F.2d at 205 (citing *Roth,* 408 U.S. at 573, 92 S.Ct. at 2707). "Thus, when a 'nontenured employee shows he has been stigmatized by the voluntary, public dissemination of false information **in the course of a decision to terminate his employment**, the employer is required to afford him an opportunity to clear his name.'" *Id.* A liberty interest in one's reputation is implicated, therefore, only when five elements are satisfied. First, the stigmatizing statements **must be made in conjunction with the plaintiff's termination from employment**. *See Paul v. Davis,* 424 U.S. 693, 709–10, 96 S.Ct. 1155, 1164–65, 47 L.Ed.2d 405 (1976)(injury to reputation by itself is not a liberty interest protected under the Fourteenth Amendment). Second, a plaintiff is **not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance**. *See Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Chilingirian v. Boris,* 882 F.2d 200, 205–06 (6th

8

> Cir.1989); *Lake Michigan College Fed'n of Teachers v. Lake Michigan Community College,* 518 F.2d 1091, 1096–97 (6th Cir.1975). "A charge that merely makes a plaintiff less attractive to other employers but leaves open a definite range of opportunity does not constitute a liberty deprivation." *Chilingirian,* 882 F.2d at 205–06 n. 8. Rather, to implicate the Due Process Clause, the employer must have made a statement ***in the course of the employee's discharge*** "that might seriously damage his standing and associations in his community" or that might impose "on him a stigma or other disability that [would] foreclose[ ] his freedom to take advantage of other employment opportunities." *Roth,* 408 U.S. at 573, 92 S.Ct. at 2707. A moral stigma such as immorality or dishonesty is required to show a deprivation of liberty. *Id.*

*Ludwig v. Bd. of Trustees of Ferris State Univ.*, 123 F.3d 404, 410 (6th Cir. 1997)

More recently, in *Crosby v. Univ. of Kentucky*, *supra*, the Sixth Circuit reiterated that alleged defamation alone is not enough to trigger this constitutional protection; rather, the alleged damage must be tied to "[s]ome alteration of a right or status 'previously recognized by state law.'" *Id*. at 555, citing *Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir. 2002)(quoting *Paul v. Davis*, 424 U.S. 693, 711–12, 96 S.Ct. 1155, 47 L.Ed.2d 405). Thus, the Sixth Circuit "has identified five factors that a plaintiff must show in order to establish that he was deprived of a liberty interest and entitled to a name-clearing hearing." *Crosby* at 555, citing *Quinn* at 320. They are as follows:

> First, the stigmatizing statements ***must* be made in conjunction with the plaintiff's termination from employment**.... Second, a plaintiff is **not** deprived of his liberty interest **when the employer has alleged** merely improper or inadequate performance, incompetence, neglect of duty or **malfeasance**.... Third, the stigmatizing statements or charges must be made public. Fourth, the plaintiff must claim that the charges made against him were false. Lastly, the public dissemination must have been voluntary.

*Id*. (quoting *Brown v. City of Niota*, 214 F.3d 718, 722–23 (6th Cir. 2000)).

An employee must "demonstrate stigmatizing governmental action which so negatively affects his ... reputation that it effectively forecloses the opportunity to practice a chosen profession." *Crosby* at 557, citing *Joelson v. United States*, 86 F.3d 1413, 1420 (6th Cir. 1996). "And we have previously held that a plaintiff's liberty interest was not implicated when the

9

plaintiff, who worked as a teacher, remained employed by the defendant school district in the wake of allegedly stigmatizing statements." *Crosby*, *id*., citing *Baar v. Jefferson Cty. Bd. of Educ.*, 311 Fed.Appx. 817, 826 (6th Cir. 2009)(plaintiff-employee failed to state a claim when he "continue[d] to work as a teacher in the [defendant] County schools" after the allegedly stigmatizing statements were publicized).

In *Crosby*, the plaintiff (like the Plaintiff herein), could not legitimately dispute that he remained employed as a teacher. Crosby attempted to argue that his position as Department Chair was a distinct employment arrangement. The Sixth Circuit found that argument meritless, stating "But Crosby cites no case, and we can find none, holding that removal from a nontenured administrative position constitutes a `termination from employment' as required by the first *Quinn* factor. The closest precedent in this circuit, in fact, noted that this area of law was not so clearly established as to overcome the defense of qualified immunity." Plaintiff herein attempts to make a similar claim concerning supplemental contracts which automatically expire based upon a specific term, *i.e.* the end of each school year.

Given the Sixth Circuit's decision in *Crosby*, which was just decided on July 17, 2017, it cannot be stated that the law is clearly established that Plaintiff was entitled to a name clearing hearing. In fact, absent termination, Plaintiff was not entitled to such a hearing and Superintendent Pittis would be entitled to qualified immunity.

And, even prior to *Crosby*, the Southern District of Ohio had reached the same conclusion. In *Gies v. Flack*, 495 F. Supp. 2d 854 (S.D.Ohio 2007), the district court noted that since Garvie had been decided, "the Sixth Circuit has interpreted an employee's liberty interest even more strictly by concluding that ***nothing short of termination constitutes a constitutional violation****…*." (Emphasis added). *Id*. at 867. The court observed that the Sixth Circuit had held "that where a

10

state employee was not terminated incident to the unfavorable statement, there was no violation of the liberty interest protected by the Due Process Clauses." *Lisle v. Metro. Gov't of Nashville and Davidson County, Tenn.,* 2003 WL 21580642 at *6 (6th Cir. July 9, 2003). *See also Siegert v. Gilley,* 500 U.S. 226, 233–34, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) ("The facts alleged by [plaintiff] cannot ... be held to state a claim for denial of a constitutional right [because] [t]he alleged defamation was not uttered incident to the termination of [plaintiff's] employment."); *Ludwig v. Bd. of Trs.,* 123 F.3d 404, 409 (6th Cir.1997), *citing Paul,* 424 U.S. at 709–10, 96 S.Ct. at 1164–65 ("A liberty interest in one's reputation is implicated ... only when ... the stigmatizing statements [are] made in conjunction with the plaintiff's termination from employment.").

In *Gies*, the plaintiff-employee attempted to argue that his banishment to the basement of the WSU Kettering Center and the prohibition of professional contact with the College faculty or staff amounted to substantial, tangible harm. However, because Gies was not terminated from his employment, he had no claim to a deprivation of his liberty interest. Accordingly, the district court concluded that "summary judgment is proper with respect to his claim requesting an order that Defendants provide him with a name-clearing hearing."

A liberty interest is not implicated in this case where it is incontrovertible that Plaintiff remains employed by the Board of Education as a teacher. Accordingly, Plaintiff has not been deprived of any constitutional right to a "name clearing hearing." Defendant Superintendent Pittis did not violate a clearly established constitutional right and, therefore, he is entitled to qualified immunity and partial summary judgment on First Amended Complaint Count One.

11

IV. **THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION ONCE THE LONE FEDERAL CLAIM HAS BEEN DISMISSED AND/OR BECAUSE THE STATE LAW CLAIMS WHICH PREDOMINATE**

Pursuant to 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over a claim where:

> 2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; or
>
> 3) the district court has dismissed all claims over which it has original jurisdiction[.]

A. **28 U.S.C. § 1367(c)(3)**

Once the Court grants Defendants' Motion for Partial Summary Judgment on Plaintiff's sole, utterly meritless, federal claim, the proper course of action would be for the Court to dismiss the remaining state law claims without prejudice. "Because no federal claims remained, the court declined to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3)(allowing a court to decline jurisdiction over state-law claims if it "has dismissed all claims over which it has original jurisdiction")." *Kalitta Air, LLC v. GSBD & Assocs.*, 591 F. App'x 338, 343 (6th Cir. 2014). "This Court has dismissed the only federal claim alleged. The Court therefore declines to exercise supplemental jurisdiction over the balance of Plaintiffs' claims, and they are dismissed **without prejudice.**" *Bender v. Logan*, No. 1:12-CV-956, 2014 WL 2515402, at *13 (S.D.Ohio June 3, 2014), *aff'd,* 608 F. App'x 356 (6th Cir. 2015).

B. **28 U.S.C. § 1367(c)(2)**

Alternatively, "supplemental jurisdiction 'is a doctrine of discretion, not of plaintiff's right,' and Congress has specifically allowed for district courts to decline to exercise supplemental jurisdiction over a state law claim if "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction....' 28 U.S.C. § 1367(c)(2). Although no

12

definitive test has been enunciated for whether state law claims predominate over federal law claims, 'courts have considered such factors as whether they outnumber the federal law claims; whether the claims are distinct; and whether [the] state law claims involve proof that is not needed to establish the federal law claims.'" *Trego v. Germain Ford of Columbus*, No. 2:07-CV-1308, 2009 WL 2913962, at *5 (S.D.Ohio Sept. 8, 2009)(internal citation omitted), citing *Williamson v. Recovery Ltd. P'ship*, No. C2–06–292, 2009 WL 649841, at *9 (S.D.Ohio March 11, 2009), citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 727 (1966). "[I]f it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." *Trego v. Germain Ford of Columbus*, No. 2:07-CV-1308, 2009 WL 2913962, at *6 (S.D.Ohio Sept. 8, 2009), citing *Gibbs*, 383 U.S. at 726–27.

Presently, in the case *sub judice*, there are five (5) state law claims [Count Two (breach of express/implied contract), Count III (unjust enrichment), Count IV (age discrimination), Count V (defamation), and Count VI (false light/invasion of privacy)], and just one (1) federal claim. The state law claims, especially the defamation and false light/invasion of privacy claims, predominate. Where there is a ratio of five (5) state law claims to one (1) federal claim, the Courts have found that the sheer volume of state law claims and the ratio of such to the remaining federal claims weighs quite heavily in favor of dismissal. See, *e.g.*, *Rugumbwa v. Betten Motor Sales*, 200 F.R.D. 358, 368 (W.D.Mich. 2001)("the court declines to exercise its supplemental jurisdiction because plaintiff's six state law claims ... substantially predominate over their single federal claim"); *Dietrich v. Simon*, 2017 WL 5201919 at *2 (6th Cir. May 17, 2017)(where the plaintiff's complaint "alleged only a single federal claim and five state law claims, the state law claims predominated,

13

and the district court did not abuse its discretion in declining to exercise supplemental jurisdiction").

In the voluntary initial disclosures, Plaintiff identified 32 different witnesses—virtually all of whom have some bearing on Plaintiff's state law tort claims. The claims are distinct from Plaintiff's sole federal claim and the proof to establish them is not necessary for the federal claim.

In contrast, regarding the federal claim, no witnesses are necessary to determine that claim. Indeed, Plaintiff's continued employment by the Board of Education has been plead in the Complaint and First Amended Complaint. In other words, there is no genuine issue of material fact that Plaintiff has not been terminated and remains employed by the Board of Education.

## V. CONCLUSION

There are no genuine issues of material fact regarding Amended Complaint Count One. Plaintiff, who is still employed by Defendant East Guernsey School District Board of Education, cannot satisfy a necessary element of a procedural due process claim based upon denial of a "name clearing hearing"; namely, that she was terminated. Thus, the Board of Education is entitled to judgment as a matter of law.

There is no clearly established constitutional right to a "name clearing hearing" for employment actions short of termination. As such, Superintendent Pittis is entitled to qualified immunity.

Based upon the foregoing, Amended Complaint Count One should, and must, be dismissed with prejudice as a matter of law and Defendants' Motion for Partial Summary Judgment regarding same granted. Furthermore, given that the state law claims predominate, the Court should decline

to exercise supplemental jurisdiction and dismiss the remaining state law claims without prejudice to re-filing in state court.

Respectfully submitted,

O'TOOLE, McLAUGHLIN, DOOLEY
& PECORA CO., LPA

By: */s/ John D. Latchney*
John D. Latchney (0046539)
*Attorney for Defendants Adam Pittis*
*and East Guernsey Board of Education*

## CERTIFICATE OF SERVICE

Counsel for Plaintiff has been notified of this filing via the U.S. District Court's ECF System at the e-mail address listed on the system on this 1st day of February 2019.

*/s/ John D. Latchney*
John D. Latchney (0046539)